UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER

JAMES TODD WHITAKER,              )
                                 )
        Plaintiff,               )
                                 )
v.                               )
                                 )    Case No.: 4:16-cv-38-TRM-CHS
NANCY A. BERRYHILL, Acting        )
Commissioner of Social Security   )
Administration,                   )
                                 )
        Defendant.               )


## REPORT AND RECOMMENDATION

I.    Introduction

      This action was instituted pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking

judicial review of the Commissioner's final decision denying James Whitaker's ("Plaintiff")

claim for Disability Insurance Benefits ("DIB"), as provided by the Social Security Act.

      This matter has been referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A)

and (B) and Federal Rule of Civil Procedure 72(b) for a report and recommendation on

Plaintiff's Motion for Summary Judgment [Doc. 20] and the Commissioner's Motion for

Summary Judgment [Doc. 23].

      I find that the Commissioner's determination that Plaintiff is not disabled under the Act is

supported by substantial evidence in the record as required by 42 U.S.C. § 405(g).

Consequently, I **RECOMMEND** that Plaintiff's motion [Doc. 20] be **DENIED**, the

Commissioner's motion [Doc. 23] be **GRANTED**, and the Commissioner's decision be

1

**AFFIRMED**.

II.  Background

    A.  Procedural History

On August 6, 2012, Plaintiff protectively filed for DIB under Title II of the Social Security Act ("Act"), 42 U.S.C. § 401 *et seq.*, based on seronegative spondyloarthopathy/psoriatic arthritis, allergies, depression, attention deficit disorder, personality disorder, anxiety, and suicidal ideation[1] [Tr. 97-103, 114-120, 148].[2]  Plaintiff's claim was denied initially and on reconsideration [Tr. 43-47, 52-54].   On August 25, 2014, Plaintiff appeared via video and testified at a hearing before Administrative Law Judge ("ALJ") Carey Jobe [Tr. 357-380].  On October 10, 2014, the ALJ issued a decision finding that Plaintiff was "not disabled," as defined in the applicable sections of the Act, because work existed in the national economy that he could still perform [Tr. 25-35].   On March 21, 2016, the Appeals Council denied Plaintiff's request for review [Tr. 1-3].   Thus, Plaintiff has exhausted his administrative remedies, and the ALJ's decision stands as the Commissioner's final decision subject to judicial review. *See* 42 U.S.C. § 405(g).

    B.  Relevant Facts

*Plaintiff's Age, Education, and Past Work Experience*

Plaintiff is currently a forty-five-year-old individual who performed past relevant work as a landscape gardener, school athletic director, and at-risk youth program counselor [Tr. 167,

---

[1] The Court will focus its review of the record on the impairments that are relevant to Plaintiff's Motion for Summary Judgment [Doc. 20].

[2] An electronic copy of the administrative record is docketed at Docs. 14 and 18.

375-376]. At the time of his amended alleged onset date of March 1, 2012, Plaintiff was forty years old [Tr. 97].

*Plaintiff's Testimony and Medical History*

The parties and the ALJ have thoroughly summarized and discussed the medical and testimonial evidence of the administrative record. Accordingly, the Court will discuss those matters as relevant to the analysis of the parties' arguments.

*The ALJ's Findings*

After considering the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since March 1, 2012, the amended onset date (20 CFR 404.1571, *et seq*.).

3. The claimant has the following severe impairments: Ankylosing spondylitis; psoriatic arthritis; obesity; attention deficit hyperactivity disorder (ADHD); depression; anxiety; a personality disorder; and history of alcohol abuse in reported remission (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform less than the full range of sedentary work activity at the unskilled and lower end of semi-skilled levels, as defined in 20 CFR 404.1567(a), requiring alternating sitting and standing at about 30 minutes to one-hour intervals; occasionally performing postural activities, such as balancing, stooping, kneeling, crouching, or crawling; no climbing of ladders, ropes, or scaffolds; frequently using bilateral hands for handling, fingering, and feeling; no assistive device is required for walking; avoiding concentrated exposure to hazards, such as work at unprotected heights or around moving machinery; limited to simple and detailed job tasks with an SVP of one to

four; and work changes should be infrequent. There are no other exertional or nonexertional limitations.

6.    The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7.    The claimant was born on October 26, 1971, and was 40 years old, which is defined as a younger individual age 18-44, on the amended alleged disability onset date (20 CFR 404.1563).

8.    The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable jobs skills (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from March 1, 2012, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 25-35].

III.    Analysis

    A.  Standard of Review

The determination of disability under the Act is an administrative decision. To establish disability under the Social Security Act, a claimant must establish he is unable to engage in any substantial gainful activity due to the existence of a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A); *Abbot v. Sullivan*,

905 F.2d 918, 923 (6th Cir. 1990). The Commissioner employs a five-step sequential evaluation to determine whether an adult claimant is disabled. 20 C.F.R. §§ 404.1520; 416.920. The following five issues are addressed in order: (1) if the claimant is engaging in substantial gainful activity he is not disabled; (2) if the claimant does not have a severe impairment he is not disabled; (3) if the claimant's impairment meets or equals a listed impairment he is disabled; (4) if the claimant is capable of returning to work he has done in the past he is not disabled; (5) if the claimant can do other work that exists in significant numbers in the regional or the national economy he is not disabled. *Id.* If the ALJ makes a dispositive finding at any step, the inquiry ends without proceeding to the next step. 20 C.F.R. §§ 404.1520; 416.920; *Skinner v. Sec'y of Health & Human Servs.*, 902 F.2d 447, 449-50 (6th Cir. 1990). Once, however, the claimant makes a *prima facie* case that he cannot return to his former occupation, the burden shifts to the Commissioner to show that there is work in the national economy which he can perform considering his age, education and work experience. *Richardson v. Sec'y of Health and Human Servs.*, 735 F.2d 962, 964 (6th Cir. 1984); *Noe v. Weinberger*, 512 F.2d 588, 595 (6th Cir. 1975).

The standard of judicial review by this Court is whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner made any legal errors in the process of reaching the decision. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (adopting and defining substantial evidence standard in the context of Social Security cases); *Landsaw v. Sec'y of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Even if there is evidence on the other side, if there is evidence to support the Commissioner's findings they must be affirmed. *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The Court may not reweigh the evidence and substitute its own judgment for that of the Commissioner merely

because substantial evidence exists in the record to support a different conclusion. The substantial evidence standard allows considerable latitude to administrative decision makers. It presupposes there is a zone of choice within which the decision makers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027 (6th Cir. 1994) (citing *Mullen v. Bowen*, 800 F.2d 535, 548 (6th Cir. 1986)); *Crisp v. Sec'y, Health and Human Servs.*, 790 F.2d 450 n.4 (6th Cir. 1986).

The court may consider any evidence in the record, regardless of whether the ALJ cited it. *See Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). However, for purposes of substantial evidence review, the court may not consider any evidence that was not before the ALJ. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is not obligated to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-cv-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and "issues which are 'adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived,'" *Kennedy v. Comm'r of Soc. Sec.*, 87 F. App'x 464, 466 (6th Cir. 2003) (quoting *United States v. Elder*, 90 F.3d 1110, 1118 (6th Cir. 1996)).

B. Discussion

Plaintiff presents four issues for review: (1) whether the ALJ failed to do a complete step three evaluation as required by 20 C.F.R. § 404.1520(a)(4)(iii); (2) whether the ALJ failed to properly evaluate and give appropriate weight to the opinion of Plaintiff's treating physician; (3) whether the ALJ failed to properly evaluate Plaintiff's subjective complaints of pain; and (4) whether the medical evidence supports the ALJ's hypothetical question to the vocational expert

6

[Doc. 20-1 at 7].

1. *Step Three*

Plaintiff first argues that the ALJ erred at step three of the sequential analysis by failing to consider whether his condition met Listing 14.09D, inflammatory arthritis [*Id.*].

At step three, the ALJ must determine whether an impairment is of such severity that it meets or medically equals one of the listed impairments found in 20 C.F.R., Part 404, Subpart P, Appendix 1. *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001). Each listing specifies "the objective medical and other findings needed to satisfy the criteria of that listing." 20 C.F.R. § 404.1525(c). An impairment satisfies the listing only when it manifests all of the specific findings described in the listing's criteria for that particular impairment. *Thacker v. Soc. Sec. Admin.*, 93 F. App'x 725, 728 (6th Cir. 2004); 20 C.F.R. § 404.1525(d). "An impairment that manifests only some of those criteria, no matter how severely, does not qualify." *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990). If an impairment does not meet the criteria of a listing, it may nevertheless medically equal a listing as explained in 20 C.F.R. § 404.1526. *See* 20 C.F.R. § 404.1525(c)(5). It is a claimant's burden to demonstrate that he or she meets or equals a listed impairment. *Thacker*, 93 F. App'x at 727-728 (citing *Buress v. Sec'y of Health & Human Servs.*, 835 F.2d 139, 140 (6th Cir. 1987)). If a claimant successfully carries this burden, he or she "will be deemed conclusively disabled, and entitled to benefits" without consideration of the claimant's age, education, and work experience. *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x 411, 414 (6th Cir. 2011); 20 C.F.R. § 404.1520(d).

Once a claimant proves the existence of a severe impairment, the ALJ must consider the impairment at step three of the sequential analysis. *See id.* at 415 (finding that the ALJ "must

compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment."). In *Reynolds*, the court found that "by failing to analyze Reynolds' physical condition in relation to the Listed Impairments," the ALJ "skipped an entire step of the necessary analysis." *Id.* at 416. The *Reynolds* court found that "[t]he ALJ's error was not harmless, for the regulations indicate that, if a person is found to meet a Listed Impairment, they are disabled within the meaning of the regulations and are entitled to benefits; no more analysis is necessary." *Id.* (citing 20 C.F.R. § 404.1520(a)(4)(iii)).

In this case, at step two, the ALJ found that Plaintiff had the severe impairments of ankylosing spondylitis and psoriatic arthritis, among others [Tr. 25]. At step three, the ALJ made the general finding that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1" [Tr. 30]. In so doing, the ALJ specifically evaluated Plaintiff's obesity and mental impairments, but found that neither reached listing-level severity [Tr. 30-31]. However, the ALJ did not specifically address whether Plaintiff's severe impairments of ankylosing spondylitis and psoriatic arthritis met a listed impairment. Plaintiff contends that these impairments meet the requirements for Listing 14.09D, inflammatory arthritis, and that the ALJ erred by failing to specifically address that listing even after Plaintiff asked him to do so at the hearing and in a prehearing memorandum [Doc. 20-1 at 7].

The listings describe the condition of inflammatory arthritis generally as follows:

The spectrum of inflammatory arthritis includes a vast array of disorders that differ in cause, course, and outcome. Clinically, inflammation of major peripheral joints may be the dominant manifestation causing difficulties with ambulation or

fine and gross movements; there may be joint pain, swelling, and tenderness. The arthritis may affect other joints, or cause less limitation in ambulation or the performance of fine and gross movements. However, in combination with extra-articular features, including constitutional symptoms or signs (severe fatigue, fever, malaise, involuntary weight loss), inflammatory arthritis may result in an extreme limitation.

20 C.F.R. Pt. 404, Subpt. P. App. 1, § 14.00D6.   Listing 14.00D6 makes clear that inflammatory arthritis (as defined in Listing 14.09) "may be associated with disorders such as" ankylosing spondylitis and psoriatic arthritis.  *Id*.  Because the ALJ concluded that Plaintiff has the severe impairments of ankylosing spondylitis and psoriatic arthritis, he should have specifically addressed whether Plaintiff's condition satisfied the criteria of Listing 14.09D.

However, as the Commissioner points out, the Sixth Circuit has also held that there is no "heightened articulation standard" at step three, and the ALJ is not required to spell out "every consideration that went into the step three determination" or "the weight he gave to each factor in his step three analysis." *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006).  The Sixth Circuit has "implicitly endorsed the practice of searching the ALJ's entire decision for statements supporting his step three analysis." *Staggs v. Astrue*, 2011 WL 3444014, at *3 (M.D. Tenn. Aug. 8, 2011) (citing *Bledsoe*, 165 F. App'x at 411) (noting that the requisite explanation and support need not be "located entirely within the section of the ALJ's decision devoted specifically to step three"); *see also Huskey v. Colvin*, 2016 WL 6573796, at *5 (E.D. Tenn. Aug. 22, 2016).  Thus, an error at step three may be harmless "if elsewhere in the disability determination, the ALJ provides a reasoned explanation as to why the claimant's impairment does not satisfy a listing." *Huskey*, 2016 WL 6573796, at *5 (citing *Bledsoe*, 165 F. App'x at 411); *see also Wilson v. Colvin*, 2015 WL 1396736, at *3 (E.D. Tenn. Mar. 26, 2015) (collecting

recent cases in which the Sixth Circuit has declined to remand when an ALJ provided "minimal reasoning at step three") (citing *Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 364-366 (6th Cir. 2014); *Malone v. Comm'r of Soc. Sec.*, 507 F. App'x 470, 472 (6th 2012)). Nevertheless, the court must find that an ALJ's decision contains "sufficient analysis to allow for meaningful judicial review of the listing impairment decision." *Gonzales v. Comm'r of Soc. Sec*., 2015 WL 687850, at *6 (N.D. Ohio Feb. 18, 2015) (quoting *Snoke v. Astrue*, 2012 WL 568986, at *6 (S.D. Ohio Feb. 22 2012)).

For Plaintiff to meet Listing 14.09D, he must demonstrate:

Repeated manifestations of inflammatory arthritis, with at least two of the constitutional symptoms or signs (severe fatigue, fever, malaise, or involuntary weight loss) and one of the following at the marked level:

      1. Limitation of activities of daily living.
      2. Limitation in maintaining social functioning.
      3. Limitation in completing tasks in a timely manner due to deficiencies in concentration, persistence, or pace.

20 C.F.R. Pt. 404, Subpt. P. App. 1, § 14.09D. The Listings explain that:

"[R]epeated" means that the manifestations occur on an average of three times a year, or once every 4 months, each lasting 2 weeks or more; or the manifestations do not last for 2 weeks but occur substantially more frequently than three times in a year or once every 4 months; or they occur less frequently than an average of three times a year or once every 4 months but last substantially longer than 2 weeks.

*Id.* at § 14.00I3. A "marked" limitation means that the signs and symptoms of the impairment "interfere seriously" with a claimant's ability to function. *Id.* at § 14.00I5. Such functional limitation

may result from the impact of the disease process itself on your mental functioning, physical functioning, or both your mental and physical functioning. This could result from persistent or intermittent symptoms, such as depression,

severe fatigue, or pain, resulting in a limitation of your ability to do a task, to concentrate, to persevere at a task, or to perform the task at an acceptable rate of speed.

*Id.* at § 14.00I7.

After considering the record and the ALJ's decision as a whole, the Court finds that the ALJ sufficiently explained why the Plaintiff's impairment did not satisfy Listing 14.09D. The ALJ discussed in some detail Plaintiff's diagnosis of ankylosing spondylitis and psoriatic arthritis as well as Dr. Sain's observations that Plaintiff suffered fatigue and joint pain, stiffness, and swelling, but had a "fair prognosis, although the disease is progressive" [Tr. 26-29, 32; 325]. However, the ALJ also noted that Plaintiff's diagnosis for these impairments was "based largely on testing performed in 2008" and that Plaintiff had received "little medical care" since his amended alleged onset date [Tr. 32]. The ALJ found that the limited treatment Plaintiff received had been frequent and routine [*Id.*]. Indeed, there is insufficient evidence in the record from which to conclude that Plaintiff had "repeated manifestations" of inflammatory arthritis as defined in the Listings. 20 C.F.R. Pt. 404, Subpt. P. App. 1, §§ 14.00I3; 14.09D. Plaintiff's visits with Dr. Sain for treatment of complaints related to inflammatory arthritis were too infrequent to meet Listing 14.09D [Tr. 331-354].

The ALJ also made findings that are incompatible with a conclusion that Plaintiff meets Listing 14.09D. Regarding Plaintiff's functional limitations, the ALJ found that Plaintiff had only mild limitations in his activities of daily living, no limitations maintaining social functioning, and moderate limitations maintaining concentration, persistence, or pace [Tr. 31]. The ALJ also found that Plaintiff's activities of daily living were not indicative of a disabling condition and that "his concentration has not been severely impacted as shown by his college

degree and by the vocational expert's testimony that his prior work was highly skilled. . . ." [Tr. 32].  These findings fall short of the marked level of impairment necessary to meet the listing.

Furthermore, although the ALJ did not determine whether Plaintiff had at least two of the requisite constitutional symptoms or signs, the Court's review of the record indicates that Plaintiff does not meet this requirement either.  Plaintiff's treating physician, Dr. Paul Sain, opined that Plaintiff's symptoms included fatigue and joint pain and stiffness [Tr. 325], but these symptoms fall short of those required by the listing.  In this regard, the Court notes that, although Plaintiff bears the burden of proof at step three, Plaintiff's brief does not identify any medical evidence of record showing the requisite constitutional signs or symptoms or relevant functional limitations.  Although Plaintiff points to his diagnoses of ankylosing spondylitis and psoriatic arthritis, an impairment "cannot meet the criteria of a listing based only on a diagnosis."  20 C.F.R. § 404.1525(d).

Plaintiff has not demonstrated from the medical evidence of record that his condition meets Listing 14.09D.  Accordingly, the Court concludes that, although the ALJ erred by failing to expressly address Listing 14.09D at step three, the error was harmless.  The ALJ fully considered Plaintiff's impairments related to inflammatory arthritis elsewhere in the opinion, explained why the impairments would not satisfy the criteria of the listing, and made findings that are incompatible with a conclusion that Plaintiff met the listing.  The ALJ's finding at step three does not warrant remand.

### 2. *Treating Source*

Plaintiff next argues that the ALJ "failed to properly evaluate and give appropriate weight" to the opinion of his treating physician, Dr. Paul Sain [Doc. 20-1 at 11].  Plaintiff also

argues that the ALJ erred because the Residual Functional Capacity ("RFC") is not specifically based on any particular medical opinion [*Id.* at 12, 15, 22-23].

Under 20 C.F.R. § 404.1502,[3] a "treating source" is defined as the claimant's "own physician, psychologist, or other acceptable medical source who provides [the claimant], or has provided [the claimant], with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with [the claimant]." *Accord Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013). An ALJ is required to give a treating source's medical opinion "controlling weight" if: "(1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.'" *Gayheart*, 710 F.3d at 376 (quoting 20 C.F.R. § 404.1527(c)(2)); *West v. Comm'r of Soc. Sec.*, 240 F. App'x 692, 696 (6th Cir. 2007).

If the treating source's medical opinion is not entitled to controlling weight, the ALJ must determine the appropriate weight to give the opinion upon consideration of the following factors: "the length, frequency, nature, and extent of the treatment relationship, . . . as well as the treating source's area of specialty and the degree to which the opinion is consistent with the record as a whole and is supported by relevant evidence." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)-(6)). If the ALJ does not give a treating source's opinion controlling weight, he must give "good reasons" that are supported by the evidence in the record and sufficiently specific to permit "meaningful review of the ALJ's application of the rule." *Wilson v. Comm'r*

---

[3] The Social Security Administration revised its rules regarding the evaluation of medical evidence. 82 Fed. Reg. 5844-01, 2017 WL 168819. The revised regulations went into effect on March 27, 2017, *id.*, and are not applicable to this case. *See Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988) ("Retroactivity is not favored in the law. Thus, congressional enactments and administrative rules will not be construed to have retroactive effect unless their language requires this result."); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) ("The Act does not generally give the SSA the power to promulgate retroactive regulations.").

*of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (internal citations omitted). A failure to give "good reasons," or a failure to determine the degree of deference owed to a non-controlling treating source opinion, "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record" and requires remand. *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551 (6th Cir. 2010) (per curiam) (quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 (6th Cir. 2007)). The treating-source rule is not, however, "a procrustean bed, requiring an arbitrary conformity at all times." *Friend*, 375 F. App'x at 551. The ultimate decision of disability rests with the ALJ. *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x. 988, 992 (6th Cir. 2007).

In this case, Plaintiff's treating physician, Dr. Paul Sain, provided a medical opinion regarding Plaintiff's physical functional limitations, which the ALJ reviewed in significant detail:

> Paul Sain, M.D., the claimant's family practice physician, completed a physical residual functional capacity questionnaire in April 2013. . . . He stated that he had diagnosed the claimant with ankylosing spondylitis, psoriasis, and attention deficit disorder (ADD). Dr. Sain further stated that he gave the claimant a fair prognosis, although the disease is progressive. He noted that the claimant's symptoms included fatigue, joint pain, and joint stiffness with daily joint pain. Further, Dr. Sain stated that the signs were psoriasis with swollen and tender joints. He further stated that emotional factors do not contribute to the claimant's symptoms and functional limitations; however, he identified depression as a psychological factor affecting the claimant's physical condition. Dr. Sain opined that the claimant experiences pain and other symptoms frequently and is moderately limited in the ability to deal with work stress. He further opined that the claimant could sit for about two hours; stand or walk for less than two hours; and stand for 30 minutes at one time. Dr. Sain noted that the claimant could walk for two city blocks without rest and he further noted that the claimant would need to walk for periods of five minutes each every [*sic*] 30 minutes during an eight-hour workday. He also noted that the claimant would need a job, which permits shifting positions at will from sitting to standing or walking. Dr. Sain also opined that the claimant could occasionally lift and carry up to 20 pounds, but would be

unable to lift and carry 50 pounds. Additionally, Dr. Sain opined that the claimant would experience significant limitation in doing repetitive reaching, handling, or fingering. He also opined that the claimant could use his bilateral hands 15 percent of the time; fingers on both hands for five percent of the time; and bilateral arms for five percent of the time during an eight-hour workday. Further, Dr. Sain opined that the claimant could bend and twist at the waist for five percent of the time during an eight-hour workday. Moreover, Dr. Sain opined that the claimant, on the average, would be absent from work more than three days a month due to his impairments or treatment for his impairments.

[Tr. 27-28].

The ALJ assigned Dr. Sain's opinion partial weight, explaining the decision to do so as follows:

I have afforded partial weight to this medical source statement by limiting the claimant to a reduced range of sedentary work. However, I am unable to grant great weight or controlling weight to Dr. Sain's assessment, as the limitations he describes are disproportionate to the evidence. Dr. Sain does not offer objective rational[e] for assessing an inability to work an eight-hour day with limited standing or walking, excessive absenteeism, or any of the other limitations. Dr. Sain, when completeing [*sic*] the medical source statement simply listed diagnoses and circles limitations on a form provided by the claimant's attorney, without further explanation. Moreover, Dr. Sain is a family practice physician, who has performed no testing, but simply performed a routine symptom check and refilled prescriptions as needed. Indeed, his own treatment notes do not contain findings that support the medical source statement, nor do his records show a consistent pattern of care. Following the visit in March 2013, for a cough, a gap in treatment occurred with Dr. Sain through May 2014. Furthermore, the claimant was seen in May and June 2014, primarily for monitoring of hypertension, which is benign, and medication refills. In addition, rashes, when noted, were treated with topical cream. The claimant's care has been entirely routine. For instance, during the visit in June 2014, Dr. Sain recommended a three-month followup. Thus, in addition to the lack of objective support, the frequency and nature of the medical care does not support the limitation in the medical source statement. Lastly, it bears noting that the medical source statement was completed in April 2013, and is currently over one year old. All of these factors weigh against granting credibility to the medical source statement . . . under the criteria of 20 CFR 404.1527. However, I must reiterate that I have given this medical source statement partial weight in limiting the claimant to a reduced range of sedentary work.

[Tr. 28].

After reviewing the ALJ's decision and the record as a whole, the Court concludes that the ALJ properly assessed Dr. Sain's medical opinion. The ALJ appropriately considered Dr. Sain to be a treating source, but determined that his opinion was inconsistent with the other evidence of record and not well supported and, therefore, not entitled to controlling weight. The ALJ went on to analyze the statutory factors in deciding the appropriate weight to give Dr. Sain's opinion. For example, the ALJ considered Dr. Sain's lack of specialization as a family physician and examined his treatment relationship with Plaintiff in detail [Tr. 27-28]. *See* 20 C.F.R. § 404.1527(c)(1)-(2), (5). The ALJ noted that Dr. Sain performed no testing and gave care that was routine in nature [Tr. 28]. The ALJ also noted that Plaintiff had significant gaps in his treatment with Dr. Sain [*Id.*]. The ALJ concluded that Dr. Sain's opinion was inconsistent with his conservative treatment of Plaintiff [*Id.*]. *See* 20 C.F.R. § 404.1527(c)(4). Contrary to Dr. Sain's suggestion that Plaintiff could not walk more than two city blocks or stand for two hours, physical examinations revealed that Plaintiff retained a normal gait, normal tandem walking, full strength, and intact sensations [Tr. 28-29, 33, 265, 268, 279, 283, 293-294, 297]. The ALJ also noted the lack of objective evidence for the opinion, the lack of further explanation for the limitations circled on the form, the lack of findings in the treatment notes to support those limitations, and the age of the medical opinion relative to Plaintiff's current condition as factors weighing against its supportability [Tr. 28]. The Court finds that the ALJ properly weighed the applicable statutory factors when determining that Dr. Sain's opinion was entitled to only partial weight. In addition, the Court finds that the ALJ explained the basis for affording partial weight

16

to the treating physician's opinion and gave good reasons for the decision. Accordingly, the Court concludes that the ALJ did not err in his consideration of Dr. Sain's opinion.

Plaintiff also argues that the ALJ erred because the RFC is not specifically based on any particular medical opinion [Doc. 20-1, at 12, 15, 22-23]. However, although an ALJ is required to consider every medical opinion in the record, 20 C.F.R. § 404.1527(c), he is not bound to adopt any particular opinion, even that of a treating physician, when formulating a claimant's RFC. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 728 (6th Cir. 2013) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled'") (quoting SSR 96-5p, 1996 WL 374183 (July 2, 1996)). The Sixth Circuit has cautioned that "ALJs must not succumb to the temptation to play doctor and make their own independent medical findings." *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 194 (6th Cir. 2009) (internal quotations omitted); *see also Meece v. Barnhart*, 192 F. App'x 456, 465 (6th Cir. 2006) ("[T]he ALJ may not substitute his own medical judgment for that of the treating physician where the opinion of the treating physician is supported by the medical evidence").

However, contrary to Plaintiff's position, there is no requirement in the Sixth Circuit that an ALJ's RFC assessment be based on a medical opinion. *See Brown v. Comm'r of Soc. Sec.*, 602 F. App'x 328, 331 (6th Cir. 2015) ("[N]either the applicable regulations nor Sixth Circuit law limit the ALJ to consideration of direct medical opinions on the issue of RFC."); *see also Rudd*, 531 F. App'x at 728. An ALJ is to determine a claimant's RFC assessment after

considering *all* of the evidence in the record, including medical opinions, but also including the objective medical evidence, the claimant's testimony, and any other relevant evidence.

In this case, although the ALJ did not give controlling weight to any one doctor's opinion, he did not ignore the medical opinion evidence and, in fact, based the RFC determination on several of the medical opinions provided. The ALJ gave partial weight to the opinions of Dr. Sain, Dr. Woodrow Wilson, Dr. J. Michael Bramble, M.A., L.P.A., and Dr. Elena Bloodgood, Ph.D., and incorporated portions of their opinions in Plaintiff's RFC [Tr. 28-31]. As discussed above, the ALJ specifically relied on Dr. Sain's opinion in limiting Plaintiff to a reduced range of sedentary work [Tr. 28]. The ALJ also evaluated the medical evidence of record, Plaintiff's testimony and credibility, and Plaintiff's reports of daily activities [Tr. 26-34]. Substantial evidence in the record supports the ALJ's RFC determination even if it is not based specifically on any one medical opinion.

### 3. Credibility Assessment

Plaintiff next argues that the ALJ "failed to properly evaluate [his] testimony, subjective complaints and credibility as a witness" [Doc. 20-1 at 15].

A claimant's statement that he is experiencing disabling pain or other subjective symptoms will not, taken alone, establish that he is disabled. 20 C.F.R. § 404.1529(a). Evaluating subjective complaints requires a two-step analysis known in this circuit as the *Duncan* test. *See Duncan v. Sec'y of Health and Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Under the *Duncan* test,

> [f]irst, we examine whether there is objective medical evidence of an underlying medical condition. [Second], [i]f there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the

condition; or (2) whether the objectively established medical condition is of such
a severity that it can reasonably be expected to produce the alleged disabling pain.

*Felisky*, 35 F.3d at 1038-39 (quoting *Duncan*, 801 F.2d at 853).   Objective medical evidence

constitutes medical signs and/or laboratory findings as defined in 20 C.F.R. § 404.1528(b)-(c).

However, the *Duncan* test "does not require objective evidence of the pain itself."   *Felisky*, 35

F.3d at 1039 (internal citation omitted).   The Commissioner may examine a number of other

factors besides medical signs and laboratory findings to determine the severity of the alleged

pain or other subjective symptoms once the underlying impairment is established by objective

medical evidence.   As the Social Security regulations explain,

When the medical signs or laboratory findings show that you have a medically
determinable impairment(s) that could reasonably be expected to produce your
symptoms, such as pain, we must then evaluate the intensity and persistence of
your symptoms so that we can determine how your symptoms limit your capacity
for work. . . .

20 C.F.R. § 404.1529(c)(1); *see also Felisky*, 35 F.3d at 1037-40.

     In addition to the objective medical evidence, the claimant's own statements regarding the

persistence, intensity, and limiting effects of his symptoms will be considered; however, in

considering those statements, the claimant's credibility will be evaluated.   *See Felisky*, 35 F.3d.

at 1036-1037.   It is the province of the Commissioner, not the reviewing court, to make

credibility findings, but the Commissioner must clearly state the reasons if he finds the claimant

to be lacking in credibility.   *Id*. at 1036; *see also Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234,

247 (6th Cir. 2007) ("It is of course for the ALJ, and not the reviewing court, to evaluate the

credibility of witnesses, including that of the claimant").   The ALJ's credibility findings "are

entitled to deference, because of the ALJ's unique opportunity to observe the claimant and judge her subjective complaints." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001).

The SSA provides a checklist of other factors that the ALJ must consider to assess the severity of a claimant's subjective complaints, including the claimant's daily activities; the location, duration, frequency, and intensity of the pain or other symptoms; precipitating and aggravating factors; medication taken to alleviate pain or other symptoms; treatment other than medication received for relief of pain or other symptoms; and any other measures used to relieve the pain or other symptoms (such as lying down or standing for 15 to 20 minutes every hour). 20 C.F.R. § 404.1529(c)(3); *see also Felisky*, 35 F.3d at 1037-38 (discussing 20 C.F.R. § 404.1529 pertaining to the evaluation of subjective complaints of symptoms such as pain).

Additionally, Social Security Ruling 96-7p[4] emphasizes that credibility determinations must find support in the record and not be based upon the ALJ's "intangible or intuitive notion[s]." 1996 WL 374186 at *4. In assessing the claimant's credibility, the ALJ must consider the record as a whole, including the claimant's complaints, lab findings, information provided by treating physicians, and other relevant evidence. *Id*. at *5. Consistency between the claimant's subjective complaints and the record evidence "tends to support the credibility of the claimant, while inconsistency, although not necessarily defeating, should have the opposite effect." *Kalmbach v. Comm'r of Soc. Sec.*, 409 F. App'x 852, 863 (6th Cir. 2011). The ALJ must explain the credibility determination such that both the claimant and subsequent reviewers

---

[4] SSR 96-7p has been superseded by SSR 16-3p which eliminates the use of the term "credibility" from SSA policy, because the SSA's regulations do not use this term, and clarifies that subjective symptom evaluation is not an examination of a claimant's character. *See* SSR 16-3p, 2016 WL 1119029, at *1 (Mar. 16, 2016). SSR 16-3p became effective on March 28, 2016 (*see* 2016 WL 1237954), so it is not applicable to the ALJ's decision in this case.

will know the weight given to the claimant's statements and the reason for that weight. Soc. Sec. Rul. 96-7p, 1996 WL 374186, at *2.

In this case, the ALJ discussed a number of factors in discounting Plaintiff's claims of disabling symptoms [Tr. 25-34]. In particular, the ALJ noted that, although Plaintiff alleged an inability to work since March 1, 2012, the record showed that he was seeking employment as late as May 2014 [Tr. 33, 351].

The ALJ also found that Plaintiff's testimony at the hearing and reports of daily activities were not fully credible. The ALJ noted that Plaintiff testified that he reclined for six hours and thirty minutes out of eight hours and had indicated in a February 2013 function report that he occasionally feeds the dog, prepares his own meals, occasionally drives, watches television daily, and visits with his daughter twice a month [Tr. 33; 368, 187-194]. The ALJ concluded that "even if the claimant's daily activities are truly as limited as alleged, it is difficult to attribute that degree of limitation to the claimant's medical condition" [Tr. 33].

The ALJ noted that Plaintiff's medical records showed that his pain improved with treatment [Tr. 26, 223, 225], and also considered that Plaintiff had significant gaps in his treatment [Tr. 28, 33]. Plaintiff was diagnosed with seronegative spondyloarthropathies in 2008, but had no treatment between February 2008 and November 2008 [Tr. 223, 225, 360]. He then received no treatment until March 2012 when he was treated for alcohol withdrawal [Tr. 271]. After that, Plaintiff did not seek treatment until October 2012 [Tr. 345]. Dr. Sain rendered his medical opinion in April 2013, but Plaintiff received no treatment between March 2013 and May 2014, as the ALJ noted, a gap in treatment of more than one year [Tr. 33, 333, 348]. When Plaintiff sought treatment after his alleged onset date, it was primarily for temporary conditions

or routine follow-up care [Tr. 32, 333, 335, 337, 339, 343, 345, 348, 351]. Despite alleging disabling mental impairments, Plaintiff received no treatment from a mental health specialist during the relevant period of disability [Tr. 32, 148, 298].

Finally, the ALJ considered the "absence of significant objective and laboratory medical findings" as well as the lack of support for Plaintiff's subjective complaints in the opinions offered by "his treating physicians or providers, the consulting physician, the consulting psychologist, the state agency physicians or psychologists, or the record as a whole" [Tr. 33].

As detailed above, the ALJ set forth a specific analysis evaluating several of the appropriate regulatory factors and concluding that Plaintiff's subjective complaints of symptoms were not fully credible. The Court concludes that the ALJ properly weighed the evidence in the record and did not err in assessing the credibility of Plaintiff's statements. The ALJ's assessment is supported by substantial evidence and complies with *Duncan*, 20 C.F.R. § 404.1529, and SSR 96-7p.

### 4.     *Hypothetical Question*

Plaintiff next argues that the ALJ erred in formulating his RFC by finding that he can frequently use his "bilateral hands for handling, fingering and feeling" and by including such a limitation in the hypothetical question to the vocational expert [Doc. 20-1 at 21; Tr. 31]. Plaintiff contends that because Dr. Sain opined that Plaintiff had limitations incompatible with this RFC, there was no basis for the ALJ to include such limitation.

There is no requirement that the ALJ's formulation of Plaintiff's RFC or the hypothetical question to the vocational expert directly correspond to Dr. Sain's opinion. *See Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 727-728 (6th Cir. 2013); *see also Griffeth v. Comm'r of Soc.*

*Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (noting that although a hypothetical question must accurately portray a claimant's impairments, an ALJ "is required to incorporate only those limitations that he accepts as credible."). Rather, it is the ALJ's role to develop the RFC based on all of the evidence in the record. *Rudd*, 531 F. App'x at 727-728. As discussed above, the ALJ gave only partial weight to Dr. Sain's opinion and it was, therefore, entirely appropriate for him not to incorporate Dr. Sain's opinion regarding Plaintiff's hand limitation. The ALJ noted that, during a consultative physical examination with Dr. Wilson, Plaintiff demonstrated full range of motion in both hands [Tr. 29; 294]. This evidence provides a sufficient basis from which the ALJ could determine that Plaintiff's hand impairment was not as significant as Dr. Sain found, but rather necessitated a limitation to only frequent use of his hands.

It was the ALJ's prerogative to include only those limitations in the hypothetical question that he found credible and well supported by the record. *See Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate only those limitations accepted as credible by the finder of fact."). In this case, the ALJ found that a limitation to frequent use of the bilateral hands for handling, fingering, and feeling was warranted by the medical evidence of record and no more. Substantial evidence in the record supports the ALJ's formulation of Plaintiff's RFC and the hypothetical question to the vocational expert, so the Court discerns no error on the ALJ's part at step five.

IV.     Conclusion

Having carefully reviewed the entire administrative record and the parties' briefs filed in support of their respective motions, I conclude that there is substantial evidence in the record to

support the ALJ's findings and the Commissioner's decision, and that neither reversal nor remand is warranted on these facts. With such support, I find that the ALJ's decision must stand, even if the record also contains substantial evidence that would support the opposite conclusion. *See, e.g.*, *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005). Accordingly, I **RECOMMEND** that Plaintiff's Motion for Summary Judgment [Doc. 20] be **DENIED**, the Commissioner's Motion for Summary Judgment [Doc. 23] be **GRANTED**, and the Commissioner's decision be **AFFIRMED**.[5]

*Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE

---

[5] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file specific objections within the time specified can constitute a waiver of further appeal of this Report and Recommendation. *Thomas v. Arn*, 474 U.S. 140 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004) (en banc).